Johnson, J.,
dissenting. I concur in the opinion just announced, except as to the judgment against Frazer.
He was only surety, and as such entitled to all the rights of a surety.
The bond was executed to the Stockstills by Serviss and Neal as principals, with Frazer as their surety.
It recites that the Stockstills had made and delivered sundry promissory notes to Serviss, on a contract of purchase by them of a patent right for certain territory, which Serviss had applied for and expected to obtain, and which, when obtained, he agreed to convey to them.
The condition of the bond was, that in the. event that Serviss should fail to obtain the issue of said patent, and to convey the same for the given territory to the Stockstills, then the notes so given were to be returned to the makers, but if any of them had been paid, then the money so paid wTas to be refunded.
By the findings and judgment we learn that Serviss failed to obtain a patent, and therefore could not perform his covenant to convoy the patent right.
Under the condition of the bond on which Frazer was surety, Serviss was jbound to return these notes. At that time, that is when his application for a patent was definitely and finally rejected, these notes were still in his hands unpaid.
After breach of the bond its conditions became operative m favor of the Stockstills. These conditions bound Serviss to return the notes then in his hands. He could not re *434 cover on them if due, and his title to them had ceased and determined.
After this, and after one of these notes for $1,000 had ■matured, Serviss sold and transferred it to one Maxwell. In his hands it was subject to the same defenses as if still held by the payee.
Maxwell being the indorsee and purchaser after maturity, could no more have enforced payment than could Serviss.
. The Stockstills, with full knowledge of all these facts, had a clear right to demand back this note, although it was in Maxwell’s hands, and they could have maintained replevin to recover it after such demand.
The same was true of all the notes that had not passed into the hands of bona fide holder's, which they were compelled to pay, or that had been paid before the rejection of the application for a patent was known.
To constitute a breach of the bond so as to make the surety liable, there must have been a failure to return the notes on hand, or a failure to return the money on such of them as had been paid to him before it was known that Serviss could not make a conveyance of the patent right, or to return moneys which they were compelled to pay to bona fide holders of such notes.
More than a year afterward, and with full knowledge that they had a valid defense to this note in Maxwell’s hands, they compromised with him, and purchased, it in at a discount. This appears to have been done to save litigation. It was their voluntary'act. To avoid possible litigation they waived their defense to the note in his hands. Eor the amount so voluntarily paid Maxwell, they now seek a recovery on the bond as well against the surety as the principal.
There is no averment in the petition nor proof in the record that auy demand was ever made of Maxwell for the 'return of this note. Their right to have it returned was clear, and for aught we know such demand has been complied with.
The principals on the bond having assigned this note to *435 Maxwell, would be estopped from availing themselves of the failure to make such demand, but the surety was not. He was no party to these transactions, and had no notice of the failure by his principals. It was not within the power of the obligees of this bond to voluntarily waive their defense to an action on the note and pay when they were under no obligations to do so, and thus create for themselves a right of action on the bond against the surety. Before such voluntary payment (made to save litigation) they had no right of action on the bond, and it is very clear that by their own acts they could not create one against a surety.
It was their duty to have demanded the return of this note, and, if Maxwell had refused to return it, and had brought suit to recover the amount, to have defended the action, giving the obligors on the bond notice of the action. The condition of the bond was to save the makers of these notes from any loss or damage by reason of giving them before receiving the consideration.
Erazer was surety for the defaults of Serviss specified in the bond, and hot for the uncalled for and voluntary acts of the obligees. If the Stockstills had paid Serviss this note while in his hands, or, as the fact was, they purchased it in at a discount to save litigation, no one will claim any foundation was laid for an action on the bond. As Maxwell wTas an indorsee after maturity, he stood in no better position than Serviss. In neither case were the Stockstills compelled (as is alleged) to pay.
Such payment to Maxwell gave no right of action against the surety.